UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN PIOTROWSKI,

        Plaintiff,

                                    Case No. 1:19-cv-17563

    v.                             Magistrate Judge Norah McCann King

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.


**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John Piotrowski for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

I.      **PROCEDURAL HISTORY**

On March 16, 2015, Plaintiff filed an application for benefits, alleging that he has been disabled since July 28, 2014. R. 181–82. Plaintiff's application was denied initially and upon reconsideration. R. 108–12, 116–18. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 119–20. Administrative Law Judge Nicholas Cerulli ("ALJ") held a hearing on July 16, 2018, at which Plaintiff, who was represented by counsel, appeared and testified, as did

a vocational expert. R. 31–81. In a decision dated September 6, 2018, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act at any time from July

28, 2014, the alleged disability onset date, through June 30, 2018, the date on which Plaintiff was

last insured for disability insurance benefits. R. 12–22. That decision became the final decision

of the Commissioner of Social Security when the Appeals Council declined review on July 23,

2019. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

August 25, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 12.[1] On August 26, 2020, the case was reassigned to the undersigned. ECF No. 13. The

matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

---

[1]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

4

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 28, 2014, his alleged disability onset date, and June 30,2018, the date on which he was last insured. R. 14.

At step two, the ALJ found that Plaintiff's coronary artery disease, hypertension, and obstructive sleep apnea were severe impairments. R. 15. The ALJ also found that Plaintiff's diagnosed impairments of degenerative disc disease, degenerative joint disease, high cholesterol, and hyperlipidemia were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15–16.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of light work. R. 16–21. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a building equipment sales representative. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 28, 2014, his alleged disability onset date, through June 30, 2018, the date on which he was last insured. R. 21.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 11. The Commissioner takes the position that his decision should be

affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 10.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     Bruce Kornberg, D.O.

On May 11, 2015, Plaintiff's treating cardiologist, Bruce Kornberg, D.O., completed a one-page functional capacity evaluation, consisting of fill-in-the-blank and check-the-box information. R. 563. Dr. Kornberg opined that Plaintiff could sit for a total of two hours in an eight-hour workday; stand and walk for a total of one half-hour; and drive for a total of two hours. *Id.* According to Dr. Kornberg, Plaintiff could constantly lift/carry up to ten pounds, but could never lift/carry more than ten pounds. *Id.* Plaintiff could frequently finger and feel; could occasionally reach and handle; but could never climb, balance, bend, stoop, kneel, crouch, or crawl. *Id.* In response to the question whether Plaintiff would be subject to environmental limitations, Dr. Kornberg checked the box marked "Yes" and wrote the following: "Anything that could place his 02 level in a compromised status he should not be exposed to it." *Id.*

On August 6, 2015, Dr. Kornberg also completed a preprinted, six-page "Cardiac Residual Functional Questionnaire" form, which consists of fill-in-the-blank and check-the-box information. R. 698−703. Dr. Kornberg indicated that Plaintiff had been his patient for more than six years. R. 698. Dr. Kornberg's diagnosis (with New York Heart Association ("NYHA") functional classification) was "FC II[,]" or NYHA functional class II.[2] Dr. Kornberg identified

---

[2] "The NYHA is the most commonly used classification system to determine patients' heart failure according to the severity of their symptoms. . . . The NYHA places patients in one of four categories based on how much they are limited during physical activity." *Reed v. Berryhill,* 337

"cardiac catheterization echocardiogram" when asked to identify the clinical findings, laboratory and test results that "show your patient's medical impairments[.]" *Id.* Asked to identify Plaintiff's symptoms from a preprinted list of words and the opportunity to fill in the blank next to "Other," Dr. Kornberg left the line blank and circled the words "shortness of breath" and "fatigue[.]" *Id.* In response to the question whether Plaintiff experiences anginal pain, Dr. Kornberg wrote the following: "dyspnea with mild to moderate exertion." R. 698–99. Dr. Kornberg denied that Plaintiff was a malingerer. R. 699. Asked whether Plaintiff has "*marked limitation of physical activity*, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though your patient is comfortable at rest[,]" Dr. Kornberg circled "Yes[.]" *Id.* (emphasis in the original).

Addressing the role of stress in precipitating Plaintiff's symptoms, Dr. Kornberg wrote, "Is one of the reasons why he does Yoga to help relieve stress[.]" *Id.* Dr. Kornberg opined that Plaintiff was incapable of even "low-stress" jobs. *Id.* When asked whether Plaintiff's physical symptoms and limitations cause emotional difficulties such as depression or chronic anxiety, Dr. Kornberg circled "Yes" and explained that Plaintiff "feels at his age this should not happen[.]" *Id.* Dr. Kornberg circled the word "Yes" to indicate that Plaintiff's emotional factors contribute to the severity of his subjective symptoms and functional limitations and he circled the word

---

F. Supp. 3d 525, 527 n.5 (E.D. Pa. 2018) (citations omitted). "[F]unctional class II includes '[p]atients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain.'" *Jackson v. Berryhill*, No. 3:13-00692, 2017 WL 4937612, at *7 (M.D. Tenn. Aug. 14, 2017), *report and recommendation adopted sub nom. Jackson v. Soc. Sec. Admin.*, No. 3:13-CV-00692, 2017 WL 4925499 (M.D. Tenn. Oct. 31, 2017) (internal citations omitted); *see also Bozarth v. Astrue*, No. 3:11-CV-00901, 2013 WL 456483, at *3 n.15 (M.D. Tenn. Feb. 5, 2013), *report and recommendation adopted*, No. 3:11-00901, 2013 WL 646914 (M.D. Tenn. Feb. 21, 2013) ("Class II under the NYHA Functional Classification system pertains to 'mild' heart failure where physical activity is slightly limited as ordinary physical activity may cause fatigue or dyspnea.'") (citations omitted).

9

"Often" in response to the question how often Plaintiff's experience of cardiac symptoms are severe enough to interfere with attention and concentration. *Id*. Dr. Kornberg circled "Yes[,]" in response to the question whether Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation. R. 699–700. According to Dr. Kornberg, fatigue was a side effect of Plaintiff's prescribed medications, Plaintiff's prognosis was fair, and Plaintiff's impairments had lasted or could be expected to last at least twelve months. R. 700.

As for Plaintiff's functional limitations in a competitive work situation, Dr. Kornberg opined that Plaintiff could walk one to two city blocks without rest, sit for 30 minutes at one time before needing to get up, and but could not stand for any length of time. *Id*. Dr. Kornberg further opined that Plaintiff would require a job that permits shifting positions at will from sitting, standing, or walking, and would need to take 15–30-minute breaks often during an eight-hour working shift. R. 701. According to Dr. Kornberg, Plaintiff's legs must be elevated above the level of his heart if required to sit for at least 25% of the time in a sedentary job. *Id*. Dr. Kornberg opined that Plaintiff could never lift and carry even less than ten pounds. *Id*. Dr. Kornberg also opined that Plaintiff could never stoop/bend, crouch, climb ladders or stairs and could rarely bend. R. 702. Plaintiff must avoid all exposure to extreme cold and heat, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery, heights, etc. *Id*. According to Dr. Kornberg, Plaintiff's impairments were likely to produce "good days" and "bad days" and he would be likely to be absent from work because of his impairments or because of the treatment of those impairments about three days per month. *Id*.

When asked to identify any additional recommended tests or procedures, Dr. Kornberg wrote as follows: "None for time being, [illegible] is stable he knows his limitation[.]" *Id*. Asked

10

to describe any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Kornberg responded: "No competitive jobs in office environment with legs down No loud noise Nothing to produce Anxiety[.]" R. 702−03.

**B.    Steven Scuderi, M.D.**

On May 14, 2015, Plaintiff's treating primary care physician, Steven Scuderi, M.D., completed a one-page functional capacity evaluation which consists of fill-in-the-blank and check-the-box information. R. 562. Dr. Scuderi opined that Plaintiff could sit for a total of six hours in an eight-hour workday and could sit for one hour continuously before needing a break; he could stand for two hours and stand for one-half hour continuously before needing a break; he could walk for a total of one and one-half hours and walk twenty minutes continuously before needing a break; and he could drive for a total of three hours and for 45 minutes continuously before needing a break. *Id.*

According to Dr. Scuderi, Plaintiff could constantly lift/carry up to ten pounds, but could never lift/carry more than ten pounds. *Id.* Plaintiff could frequently handle, finger, and feel; could occasionally balance, bend, stoop, kneel, crouch, and reach; but could never climb or crawl. *Id.* Asked whether Plaintiff should be subject to environmental limitations, Dr. Scuderi checked the box marked "Yes" and wrote that Plaintiff "should not have exposure to cold / Heat / Wind / unfinished homes – roads – work sites (ie, construction sites)[.]" *Id.*

**V.    DISCUSSION**

**A.    Treating Physicians**

Plaintiff argues that the ALJ erred in discounting the opinions of his treating sources, Dr. Kornberg and Dr. Scuderi. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 6−11; *see also Plaintiff's Reply*, ECF No. 11, pp. 1−2. This Court disagrees.

11

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). An ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject

evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, the ALJ considered the opinions of Dr. Kornberg and Dr. Scuderi and assigned them "little weight," reasoning as follows:

> Dr. Kornberg completed a physical capacities assessment form in May 2015. Dr. Kornberg offered his opinion that the claimant could lift/carry up to 10 pounds occasionally and could never lift/ carry more than 10 pounds. According to Dr. Kornberg, the claimant could sit no more than two hours, stand and/or walk no more than 30 minutes, and drive no more than two hours in an eight-hour workday. Dr. Kornberg further opined that the claimant could never climb, balance, bend, stoop, kneel, crouch, and crawl; occasionally reach and handle; and frequently finger and feel (Exhibit 6F, page 2). Dr. Kornberg completed another physical capacities assessment form in August 2015. He offered a similar, and somewhat more restrictive, opinion than in the May 2015 form. Dr. Kornberg further opined the claimant was incapable of performing even "low stress" jobs, that he would miss work approximately three times each month, and that he was unable to perform "competitive jobs in [an] office environment with legs down" (Exhibit 9F, pages 62-67).
>
> Steven Scuderi, M.D., also completed a physical capacities assessment form in May 2015. Dr. Scuderi offered his opinion that the claimant could sit no more than one hour at a time or for a total of six hours, stand no more than 30 minutes at a time or for a total of two hours, walk no more than 20 minutes at a time or for a total of 90 minutes, and drive no more than 45 minutes at a time or for a total of three hours

i[n] an eight-hour workday. According to Dr. Scuderi, the claimant could lift no more than 10 pounds. He further opined that the claimant could never crawl or climb; occasionally balance, bend, stoop, kneel, crouch, and reach; and frequently handle, finger, and feel. He also noted that the claimant could not be exposed to temperature extremes or work sites such as construction sites (Exhibit 6F, page 1).

If a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. However, controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. A finding that a treating source's medical opinion is not entitled to controlling weight under the above criteria does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator. In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion (20 CFR 404.1527 and 416.927).

Applying the above principles, the undersigned finds that the opinions of Drs. Kornberg and Scuderi are not entitled to controlling or deferential weight under the Regulations, because they are not well supported by medically acceptable clinical findings in the record and are inconsistent with other substantial medical evidence of record. The undersigned gives little weight to both assessments. The undersigned acknowledges that Dr. Kornberg was the claimant's treating cardiologist and Dr. Scuderi saw the claimant on a regular basis for primary care treatment. However, both doctors primarily checked off boxes on the forms and provided no significant supporting explanation for their opinions. Dr. Scuderi specifically indicated he based his answers to the questions on the form on the claimant's responses when reviewing the questions. Dr. Scuderi also noted he did not perform an examination at that time (Exhibit 8F, pages 12-13).[3] Further, the assessments of both physicians are unsupported by the overall record, including their own progress notes. As discussed above, the progress notes from Dr. Kornberg and Dr. Scuderi consistently document relatively normal physical examinations, including normal cardiovascular and respiratory findings. The claimant generally had no complaints of shortness of breath or fatigue, with few exceptions, and these physicians

---

[3] In notes from a visit dated May 14, 2015, Dr. Scuderi noted as follows: "1. Complete form here for 'functional capacatiy [sic] form' completiion [sic] as requested but his insurance company. Pateint [sic] has limited ability from a cardiac standing point (not neuro nor MSK) that is under rx by CARD. Reviewed the questions on the form with the patieint [sic] and answered questins [sic] based on patients [sic] response[.]" R. 618. Dr. Scuderi also noted that he conducted "no exam…just 30 min questions and form completion[.]" R. 620.

indicated on many occasions that coronary artery disease and hypertension were controlled. Sleep apnea was also under good control with the use of a CPAP and/or Bi-PAP machine. For all of these reasons, the undersigned finds that these assessments are unsupported and that limiting the claimant to a full range of light exertion adequately accounts for all of his impairments.

R. 19−20. In support of this assessment, the ALJ specifically considered evidence in the record, including progress notes by Dr. Kornberg and Dr. Scuderi, that was inconsistent with these physicians' opinions, such as evidence that Plaintiff's coronary artery disease was stable, that Plaintiff felt well, and that Plaintiff denied shortness of breath, exertional dyspnea, and any significant complaints:

Since that time [when Plaintiff had his triple bypass procedure in July 2014], and through the date last insured, his coronary artery disease was stable, and he had no pulmonary embolism issues (see, for example, Exhibits 3F, page l; 8F, page 21; 9F, page 5; 11F, pages 10, 19, 37; 16F, page 172; 21F, pages 1, 14, 20). Specifically, in January 2015, his primary care physician indicated that the claimant's coronary artery disease had been stable, and the claimant said he felt well. This physician also indicated the claimant had no issues regarding the prior pulmonary embolism (Exhibit 3F, page l; see also duplicates at 4F). Further, recent chest x-rays showed no acute pulmonary disease (Exhibit 15F), and his electrocardiogram showed a normal sinus rhythm (Exhibit 14F, page 2).

Moreover, contrary to claimant's testimony at the hearing, the records from Lankenau Heart Institute indicate that he consistently denied shortness of breath with exertion, as well as exertional dyspnea. Physical examinations during this time, specifically cardiovascular and respiratory findings findings [sic], were also normal (Exhibits 5F pages 1, 3, 5; 10F, pages 1-2, 4-5, 7-8, 10-11; 0; 14F at 1). Notably, in November 2014, cardiologist Bruce Kornberg, D.O., noted the claimant was "completely asymptomatic" (Exhibit 5F, page 5). In January 2015, Dr. Kornberg indicated the claimant was hemodynamically stable and that he was "thrilled" with how the claimant looked. The claimant again denied any significant complaints (Exhibit 5F, page 3; see also duplicates at 9F). The claimant stated in June 2015 that he was retired and felt "well" (Exhibit 9F, page 83). In February 2017, Dr. Kornberg noted the claimant "look[ ed] great" and "fe[lt] great" (Exhibit 10F, page 1 ). The claimant also stated on several occasions that he could even climb a flight of stairs at a normal pace without getting short of breath (Exhibits 10F, pages 7, 13; 14F, page 1).

The claimant also acknowledged that, although his blood pressure became elevated when he felt stressed, he had no symptoms related to high blood pressure. This is confirmed by the medical records, which indicate his hypertension was controlled.

Specifically, on several occasions between December 2015 and March 2018, his physicians reported the claimant's hypertension was controlled (Exhibits 10F, page 11; 14F, page l; 21F, pages 1, 14, 20). The record also shows no significant complications or end organ damage related to hypertension. When considering this evidence, as well as the fact that the claimant's coronary artery disease has been stable and also under good control, the undersigned finds that limiting the claimant to a full range of light exertion adequately accounts for these conditions.

The residual functional capacity above for a full range of light exertion also accounts for sleep apnea, which was treated successfully. A sleep study in April 2015 showed findings consistent with obstructive sleep apnea syndrome (Exhibit 8F, pages 28-30). However, he subsequently began using a Bi-PAP machine, and in June 2015, pulmonologist Allen Salm, M.D., indicated the claimant was compliant and benefiting from the consistent use of his Bi-PAP machine (Exhibit 6F, page 28; see also duplicates at 8F). Although the claimant complained in May 2016 that his CPAP machine made noise during the night, he reported good compliance and said he ultimately felt well rested with the use of the device (Exhibit 11F, page 31; see also duplicates at 23F). In July 2017, the claimant said he was compliant with his machines and reported an improvement in previously reported symptoms (Exhibit 23F, pages 1-2). Moreover, the claimant testified at the hearing that, although he would stop breathing while sleeping without the use of a Bi-PAP machine, he was able to get a good night's sleep with the use of the device. The claimant also denied complaints of fatigue on many occasions throughout the record (see, for example, Exhibits 3F, page 5; 8F, page 26; 9F, page 73; 11F, pages 8, 14, 24, 35; 16F, page 184; 21F, pages 5, 12, 18; 22F, page 5; 23F, pages 5, 12).

R. 17–18. In short, the ALJ specifically considered these physicians' treating relationship with

Plaintiff, *i.e*., Dr. Kornberg as Plaintiff's cardiologist, and Dr. Scuderi as Plaintiff's primary care

physician, but discounted their opinions as inconsistent with other substantial medical evidence,

including these physicians' own treatment notes. The ALJ therefore properly found that these

treating physicians' opinions were unsupported by the medical evidence. *See* 20 C.F.R. §

404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole,

the more weight we will give to that medical opinion."); *Wimberly v. Barnhart*, 128 F. App'x

861, 863 (3d Cir. 2005) (holding that the ALJ did not err by refusing to assign controlling weight

to a treating physician's opinion that "was itself internally inconsistent"); *Smith v. Astrue*, 359 F.

App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion is

contradicted by several pieces of evidence in the record and also contains internal inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating physician's opinion"); *Metzger v. Saul*, No. CV 19-270, 2019 WL 3530442, at *7 (E.D. Pa. Aug. 2, 2019) ("Moreover, courts have consistently held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *7 (D.N.J. Jan. 31, 2019) ("The ALJ here reasonably discounted the opinion at issue upon a reasonable reading of seemingly contradictory treatment notes.").

Plaintiff challenges the ALJ's evaluation in this regard, arguing that the opinions of Dr. Kornberg and Dr. Scuderi were consistent with each other, thus undermining the ALJ's findings that these opinions were inconsistent with and unsupported by the medical evidence. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 9–10. Plaintiff's argument is not well taken. Even if these opinions were consistent with each other, it is clear, as the ALJ explained with citation to the record, that these opinions were inconsistent with other substantial medical evidence, including their own progress notes. R. 17–20. Substantial evidence therefore supports the ALJ's finding in this regard and Plaintiff's argument will not serve as a basis for remand. *Cf. Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (stating that courts "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied") (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical

17

evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff also argues that the reviewing state agency physicians "indicated additional restrictions beyond those indicated by the ALJ," suggesting that these state agency findings undermine the ALJ's evaluation of the opinions of Dr. Kornberg and Dr. Scuderi. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 9–11 (citing R. 87–88, 101–102). Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff does not identify the "additional restrictions" referred to by him and the Court will not guess what Plaintiff intends by this term. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Moreover, the ALJ explained his assessment of the reviewing state agency physicians' opinions, including the non-exertional limitations:

> As for the opinion evidence, the State agency reviewing physicians limited the claimant to light exertion, subject to the following additional limitations: occasional climbing ladders, ropes, or scaffolds; occasional crawling and climbing ramps and stairs; and frequent stooping, kneeling, and crouching (Exhibits 1A, pages 6-7; 3A, pages 8-11). The undersigned gives significant weight to the opinions of the State agency reviewers, as their assessment for light exertion is supported by the overall record, as discussed above. However, the undersigned gives little weight to the non-exertional limitations indicated in their assessments. For the reasons discussed above, no additional limitations are warranted, as the claimant's coronary artery disease has been stable since the 2014 heart surgery, and both hypertension and sleep apnea have been under relatively good control with medication. Further, the inability to ascend or descend ladders or scaffolding is not significant at any exertion level (see SSR 83-14). Crouching is also not required at the light exertion level; kneeling limitations do not have a significant impact upon the broad world of work; and that stooping is required only occasionally as part of light exertion (see SSRs 83-14 and 85-15). Thus, most of the additional limitations suggested by the State agency reviewers would not have any affect [sic] upon the light

18

occupational base and would not significantly affect the conclusion in Finding
Number 6 below.

R. 19.

In any event, even if the ALJ erred in his consideration of the reviewing state agency

physicians' opinions, these physicians nevertheless concluded that Plaintiff could perform his

past relevant work. R. 90, 103. Plaintiff therefore has not explained how remand is warranted on

this basis. *See Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he

party seeking reversal normally must explain why the erroneous ruling caused harm.");

*Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not

affect the outcome of the case"); *Padgett*, 2018 WL 1399307, at *2.

Plaintiff further contends that, contrary to the ALJ's finding that medical evidence did not

support Dr. Kornberg's opinion, Dr. Kornberg specifically referred to the results of cardiac

catheterization and echocardiogram in his August 6, 2015, opinion. *Plaintiff's Memorandum of

Law*, ECF No. 9, pp. 9−10 (citing R. 698). Plaintiff's argument is not well taken. While it is true

that Dr. Kornberg cited to these tests, he did so in response to the question asking him to identify

"the clinical findings, laboratory and test results which show your patient's *medical

impairments*." R. 698 (emphasis added). In other words, Dr. Kornberg used these test results to

support his diagnoses. *See id*. As set forth above, the ALJ acknowledged those diagnoses in his

finding that Plaintiff suffers the severe impairments of coronary artery disease, hypertension, and

obstructive sleep apnea. R. 15. However, the ALJ discounted the opinions of Dr. Kornberg (and

Dr. Scuderi) to the extent that their opinions included serious functional limitations resulting

from those impairments. R. 20. It is well-established that a diagnosis alone does not establish the

degree of impairment flowing from that diagnosis. *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x

805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act").

Finally, Plaintiff contends that the medical evidence supports a finding that Plaintiff—a 61-year-old man on his alleged disability onset date who had "light exertional, highly skilled past relevant work" and a "significant cardiac event causing serious physical and cognitive dysfunction"—has limitations that would preclude his ability to return to his past relevant work "such that the Plaintiff has carried his burden at Step 4 of the Sequential Evaluation Process and should have been found to be disabled at Step 5 per Medical Vocational Rule 201.06." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 11. This conclusory contention, without any explanation or citation to authority, is wholly unpersuasive.

For all these reasons, the ALJ's explanation persuades this Court that substantial evidence supports the ALJ's evaluation of the opinions of Dr. Kornberg and Dr. Scuderi.

**B.     RFC**

Plaintiff also argues that the ALJ's RFC determination lacks substantial support. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 11–15; *Plaintiff's Reply Brief*, ECF No. 11, pp. 2–3. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of light work. R. 16. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, evidence that Plaintiff's coronary artery disease had been stable since his 2014 triple bypass procedure and that Plaintiff had no pulmonary embolism issues; that Dr. Scuderi noted in 2015 that Plaintiff reported that he felt well; that 2017 chest x-rays revealed no acute pulmonary disease; that a 2018 electrocardiogram showed a normal sinus rhythm; that records from Lankenau Heart Institute indicated that Plaintiff consistently denied shortness of breath with exertion and exertional dyspnea; that Plaintiff's physical examinations were normal, including cardiovascular and respiratory findings; that Dr. Kornberg noted in November 2014 that Plaintiff was "completely asymptomatic" and in January 2015 that Plaintiff was hemodynamically stable, that he was "thrilled" with how Plaintiff looked, and that Plaintiff denied any significant complaints; that Plaintiff stated in June 2015 that he was retired and felt "well;" that Dr. Kornberg noted in February 2017 that Plaintiff "look[ ed] great" and "fe[lt] great;" that Plaintiff

stated on several occasions that he could climb a flight of stairs at a normal pace without experiencing shortness of breath and that, although his blood pressure became elevated when he felt stressed, he had no symptoms related to high blood pressure; that on several occasions between December 2015 and March 2018, Plaintiff's physicians reported that Plaintiff's hypertension was controlled and the record showed no significant complications or end organ damage related to hypertension; that Plaintiff's sleep apnea was treated successfully with a Bi-PAP machine; that Plaintiff denied complaints of fatigue on many occasions throughout the record; that Plaintiff's daily activities were inconsistent with his complaints of disabling symptoms and limitations; that Plaintiff's claimed need to nap twice per day and take frequent rest breaks during activity was unsupported by the objective findings and his statements to his providers; and that the state agency reviewing physicians assessed Plaintiff as capable of light exertion. R. 16–19. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff challenges this determination, however, arguing that the ALJ failed to discuss Plaintiff's ability to perform work functions on a regular and continuing basis. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 11–15; *Plaintiff's Reply Brief*, ECF No. 11, pp. 2–3. Relying on Dr. Kornberg's August 2015 opinion, Plaintiff specifically contends that he requires multiple rest breaks and work absences (up to three a month) due to chronic fatigue and weakness. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 14–15 (citing R. 702). Plaintiff's argument is not well taken. As previously discussed, the ALJ properly discounted Dr. Kornberg's opinions as inconsistent with the record evidence, including his own notes where he

22

recorded, *inter alia*, normal examination findings; noted that Plaintiff was "completely asymptomatic" and that he was "thrilled" that Plaintiff looked "great" and "fe[lt] great." R. 18.

To the extent that Plaintiff relies on his subjective complaints of fatigue, that reliance is unavailing. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the

23

type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[4]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints, including his complaints of fatigue. R. 16–17. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 17. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 17–20. The ALJ also considered that Plaintiff "denied complaints of fatigue on many occasions

---

[4]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

throughout the record." R. 18. The ALJ went on to consider Plaintiff's daily activities, finding

them inconsistent with his subjective complaints:

> Further, the claimant's description of daily activities is inconsistent with his complaints of disabling symptoms and limitations. In April 2015, the claimant said he had recently taken a trip to Florida (Exhibit 3F, page 8). As discussed above,[5] the claimant said he was able to prepare simple meals for himself and do light household chores, including cleaning, dusting, emptying the dishwasher, watering plants, and laundry, on a daily basis. He also indicated no difficulty with activities of personal care. Although the claimant said he needed to nap twice per day and needed to take frequent rest breaks during these activities, this is unsupported by the objective findings and the claimant's statements to his providers, as discussed above. Moreover, the claimant stated in June 2015 that he was "retired" and was feeling well (Exhibit 9F, page 83). This supports a reasonable inference that the claimant stopped working full-time in order to retire, not because of any alleged disability. This evidence, when considered with the other evidence discussed above, further supports a finding that the claimant was capable of performing a full range of light work. For these reasons, and for the other reasons discussed above,

---

[5] Earlier in the decision, the ALJ had noted Plaintiff's daily activities as follows:
> Regarding activities of daily living, the claimant reported that he lived in an apartment with family. He said he needed to nap once or twice per day, for approximately 45 minutes to an hour at a time. He testified that he was unable to do any exercise or perform any task or activity for a lengthy period. He indicated no difficulty with activities of personal care. Although he initially indicated no difficulty sleeping at night, he subsequently testified that he experienced leg cramping at night. He also said he needed to use a Bi-PAP machine or he would stop breathing while sleeping; however, he said he was able to get a good night's sleep with the device. He said he was able to prepare simple meals for himself and do light household chores, including cleaning, dusting, emptying the dishwasher, watering plants, and laundry, on a daily basis. However, he said he became fatigued after performing chores such as washing the laundry or vacuuming, and he said it took two hours to straighten up the house, because of his fatigue and need to take breaks (Exhibits 4E, 9E; Testimony).
>
> According to the claimant, he was able to drive or walk when he needed to go somewhere, and he initially said he shopped in stores for groceries three times per week, for approximately an hour each time. He said he did volunteer work at local church kitchen three times per week and regularly went to the library. At the hearing, the claimant said he drove on a daily basis but was unable to drive for long distances of more than an hour, because he becomes tired and his legs cramp and feel achy. He said he visited Philadelphia every other month, although it took him a while to climb the steps to board the PATCO high-speed line (Exhibits 4E, 9E; Testimony).

R. 17.

the undersigned finds that the claimant's complaints of disabling symptoms are not
fully supported by the record.

R. 18–19. Although Plaintiff asserts that the ALJ should not have considered his daily activities

when assessing his subjective statements, *Plaintiff's Reply Brief*, ECF No. 11, p. 2, "it is

appropriate for an ALJ to consider the number and type of activities in which a claimant engages

when assessing his or her residual functional capacity. . . and was permitted to consider them to

evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms."

*Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012); *see also Loneker v.

Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The

ALJ's decision is consistent with the Third Circuit's recognition that "[a]lthough 'any statements

of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not

required to credit them," particularly where such statements are undermined by evidence of a

more active lifestyle.") (quoting *Chandler v. Comm'r*, 667 F.3d 356, 363 (3d Cir. 2011)). This

record therefore provides substantial support for the ALJ's decision to discount Plaintiff's

subjective statements as inconsistent with the medical evidence and Plaintiff's daily activities.

*Id.*; *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134. Accordingly, to the extent that

Plaintiff relies on his own subjective statements of chronic fatigue to undermine the ALJ's RFC

determination, that argument is unavailing. *Id.*

Turning back to Plaintiff's challenges to the RFC determination, Plaintiff also contends

that the ALJ erred by failing to consider Plaintiff's cognitive deficits when fashioning the RFC.

*Plaintiff's Memorandum of Law*, ECF No. 9, p. 15 (citing R. 509, 655, 959, 1267, 1268);

*Plaintiff's Reply Brief*, ECF No. 11, pp. 2–3. Plaintiff's argument, which relies on isolated

incidents without the full context, is not well taken. Plaintiff cites to Dr. Kornberg's statement to

Dr. Scuderi, dated September 24, 2014, that Plaintiff's cognitive function "is not what it was yet,

but his personality is coming back and he looks pretty good at this point." (Tr. 509, 655 (duplicate)). Notably, Dr. Kornberg's observation was rendered less than two months after Plaintiff's coronary bypass surgery and which predates Plaintiff's subsequent, normal, examinations that the ALJ considered. R. 17–20.

Plaintiff also points to Dr. Kornberg's note, made following an August 2015 office visit, suggesting an examination of Plaintiff's carotid arteries "*because his wife says he has some cognitive dysfunction*." R. 959 (emphasis added). The ALJ, however, specifically considered but assigned "little weight" to Plaintiff's wife's August 2015 statements about Plaintiff's physical and mental limitations in a third party function report. R. 20–21. Plaintiff does not challenge the ALJ's evaluation in this regard. *See generally Plaintiff's Memorandum of Law*, ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 11. Moreover, as previously discussed, the ALJ need include only "credibly established" limitations—not a lay third party's assertions lacking any specific functional limitations—in his RFC determination. *See Rutherford*, 399 F.3d at 554; *Zirnsak*, 777 F.3d at 615.

Plaintiff goes on to rely on two references to memory changes made by Dr. Scuderi following a July 2015 examination. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15 (citing R. 1267 (noting that Plaintiff "forgets to take things when he packs but [has] no other issues"); and Tr. 1268 (concluding, in the same record, "memory becoming more of an issue (forgets things to take when travels)"). However, notes from the same visit also reflect that Plaintiff's memory was characterized as normal. R. 1271. Therefore, even if the ALJ erred in not explicitly discussing these specific portions of Dr. Scuderi's notes, the Court finds that any such error is harmless where the ALJ appropriately discounted Dr. Scuderi's opinions as inconsistent. R. 20; *see also Shinseki*, 556 U.S. at 409–10. Moreover, the ALJ also considered that, in June 2015, *i.e.,* one

27

month before this examination, Plaintiff stated that he was retired and felt "well" and that, in

January 2015, Plaintiff denied any significant complaints. R. 18 (citing Exhibit 5F, p. 3, R. 504;

Exhibit 9F, p. 83, R. 719). In addition, although the ALJ did not expressly discuss Plaintiff's

cognitive status, he noted that Plaintiff's physical examinations were normal and he considered

progress notes that reflected normal neurological function and memory. R. 18 (citing, *inter alia*,

Exhibits 5F (notes from Dr. Kornberg's April 24, 2015 evaluation, which also reflects

"Neurological: No focal signs", R. 503; notes from Dr. Kornberg's January 23, 2015 visit, which

reflects "Neurological: No focal signs"), 9F (notes from June 3, 2015 office visit that reflect

"negative" for "difficulty concentration," R. 722, and "Memory – Normal," R. 723). In any

event, as previously noted, where substantial evidence supports the ALJ's decision, the Court

will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite

conclusion. *See Johnson*, 497 F. App'x at 201.

   Finally, Plaintiff complains that the ALJ's finding, at step two of the sequential

evaluation, that Plaintiff's sleep apnea was severe "necessitates" including a functional limitation

in the RFC. *Plaintiff's Reply Brief*, ECF No. 11, p. 2. This Court disagrees. As already discussed,

the ALJ need include only "credibly established" limitations in the RFC determination.

*Rutherford*, 399 F.3d at 554; *Zirnsak*, 777 F.3d at 615. Here, as detailed above, the ALJ

specifically considered Plaintiff's sleep apnea at step four when fashioning the RFC but

determined that Plaintiff was nevertheless capable of performing a full range of light exertion.

This determination is supported by evidence that Plaintiff's sleep apnea was treated successfully

through the effective use of Bi-PAP and CPAP machines, and evidence that Plaintiff reported a

good night's sleep and denied complaints of fatigue on many occasions. R. 18. Plaintiff's

argument that the ALJ erred in failing to include any unidentified functional limitations to account for his sleep apnea must therefore fail.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


**IT IS SO ORDERED.**


Date:  May 7, 2021                                          *s/Norah McCann King*
                                                          NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE